UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUDY KAREN JOHNSON,       )<br>                          )<br>            Plaintiff,     )<br>                          )<br>        v.                )<br>                          )<br>CAROLYN W. COLVIN,        )<br>ACTING COMMISSIONER OF SOCIAL )<br>SECURITY ADMINISTRATION,  )<br>                          )<br>            Defendant.    )<br>_____) | No. CV 13-6222-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 28, 2013, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on November 1, 2013, and January 22, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 16, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 14, 1967. [Administrative Record ("AR") at 20, 50, 61-62, 72.] She has a high school education and no past relevant work experience. [AR at 20, 32-33.]

On March 14, 2011, plaintiff filed an application for Supplemental Security Income payments, alleging that she has been unable to work since January 1, 1998. [AR at 14, 63, 138-48, 159.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 14, 73-76, 79-83, 88-90.] A hearing was held on March 28, 2012, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 14, 29-49.] A vocational expert ("VE") also testified. [AR at 14, 42-47.] On March 30, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from March 14, 2011, through the date of the decision. [AR at 14-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 8-10.] When the Appeals Council denied plaintiff's request for review on July 24, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 1-5]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the

2

Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires

the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id.  The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of her application, March 14, 2011. [AR at 16.]  At step two, the ALJ concluded that plaintiff has the severe impairments of "arthritis, obesity, anxiety disorder [not otherwise specified], [and] learning disorder." [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[1] [AR at 16-19.]  The ALJ further found that plaintiff retained the

---

[1]   See 20 C.F.R. pt. 404, subpt. P, app. 1.

4

residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 416.967(b)[3], with certain limitations. Specifically, the ALJ determined:

> [plaintiff can] perform light work ... except with occasional stooping, crouching, kneeling, crawling and climbing of stairs and with avoidance of working in environments where there [is] concentrated exposure to dust, fumes, pollutants and temperature changes or in hazardous environments. She has mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence and pace. Accordingly, she can perform simple, repetitive tasks with no public contact, limited interaction with co-workers and alone. She is allegedly illiterate.

[AR at 19.] At step four, the ALJ concluded that plaintiff has no past relevant work experience. [AR at 20.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including work as a "packing line worker," and performing "assembly of small parts." [AR at 21.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since the date of the application. [AR at 14, 21.]

## V.
## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) erred in "not finding [that] plaintiff met or equaled a listing level impairment[;]" (2) erred in his assessment of plaintiff's credibility; (3) failed to assign "appropriate weight to the medical evidence in plaintiff's file[;]" and (4) erred "by not procuring

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

1  plaintiff's prior file." [Joint Stipulation ("JS") at 2-4, 7-11, 15-17, 20-22.]  As explained below, the
2  Court agrees with plaintiff, in part, and remands for further proceedings.

**ALJ FAILED TO ASSIGN PROPER WEIGHT TO TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ failed to assign appropriate weight to the medical evidence in plaintiff's file, specifically by "wrongly disregard[ing] and discredit[ing] the documents" from plaintiff's treating physician, Dr. Huckabay. [JS at 2, 16-17, 20.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating . . . physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

In a "Complete Orthopedic Consultation" performed on April 13, 2011, Dr. Anh Tat Hoang performed an orthopedic examination on plaintiff, and diagnosed her with "[c]hronic cervical sprain/strain: no findings of radiculopathy[;] [p]atellar chondromalacia, bilateral[; and] [b]ilateral hip,

bilateral shoulder: [m]ost likely arthritis." [AR at 222-25.] Dr. Hoang reported that plaintiff "has a normal gait and does not use any assistive ambulatory device," and opined that plaintiff "can lift and/or carry 50 pounds occasionally and 20 pounds frequently," can "stand and/or walk six hours in an eight-hour workday with changes in position and normal breaks," and can "sit six hours in an eight-hour workday." [AR at 225.]

In a progress note dated June 9, 2011, Dr. Christina Huckabay diagnosed plaintiff with chronic back pain, asthma, dyslipidemia, polycystic ovarian syndrome, "healthcare maintenance," and morbid obesity. [AR at 270.] She indicated that plaintiff "[m]ay need referral to pain [management] clinic," and that she was "agreeable to filling app[lication] for handicap placard but advised [plaintiff] to use it only for grocery shopping," so that plaintiff would "maximize her daily steps/physical activity as much as poss[ible]." [AR at 272.]

In a progress note dated July 27, 2011, Dr. Huckabay diagnosed plaintiff with dysuria, and ordered a prescription of ciprofloxacin to treat that condition. [AR at 266-67.]

In a progress note dated August 11, 2011, Dr. Huckabay diagnosed plaintiff with constipation, chronic back pain, morbid obesity, impaired fasting glucose, and hyperlipidemia. [AR at 262.] She noted that plaintiff's back pain was "[significantly] improved with gabapentin." [AR at 264.]

In a progress note dated October 7, 2011, Dr. Huckabay diagnosed plaintiff with dysuria and morbid obesity. [AR at 259-60.]

In a progress note from a gynecological exam on October 11, 2011, Dr. Huckabay diagnosed plaintiff with, among other things, chronic back pain, and ordered a refill of plaintiff's pain medication. [AR at 256-58.]

In a progress note dated October 17, 2011, Dr. Huckabay diagnosed plaintiff with cutaneous skin tags, ingrown toenail, onychomycosis, and "[s]houlder pain, left." [AR at 253.] In the "Assessment/Plan" portion of the progress note, Dr. Huckabay indicated that plaintiff would "continue pain medications" as needed, and "if no improvement after [a] few weeks, send for xrays." [AR at 254.]

In a progress note dated October 26, 2011, Dr. Huckabay diagnosed plaintiff with chronic left shoulder pain, chronic back pain, and bilateral knee pain. [AR at 250.] In the "Assessment/Plan" portion of the progress note, Dr. Huckabay indicated that she advised plaintiff to "increase gabapentin to 600mg in [the morning] and evening and continue 300mg in the afternoon," and that she was ordering x-rays of plaintiff's shoulder, back, and knee. [AR at 251-52.] She noted that plaintiff would be referred to physical therapy "and/or ortho[pedist] once get xray results." [AR at 251.]

On October 18, 2011, Dr. Huckabay provided a functional assessment of plaintiff in a form entitled: "Medical Opinion re: Ability to do Work-Related Activities," indicating certain limitations based on plaintiff's "[s]ignificant difficulty with mod[erate to] heavy lifting, reaching due to [left] shoulder pain," limited mobility and walking ability "due to chronic back pain," and plaintiff's need for a "rescue inhaler for asthma for exacerbation of symptoms." [AR at 243-46.] Specifically, Dr. Huckabay opined that plaintiff's ability to lift and carry is "impaired," that plaintiff can occasionally lift and carry a maximum of "less than [ten pounds]," and that plaintiff can frequently lift and carry a maximum of "less than [ten pounds]." [AR at 243.] With regard to standing and walking, Dr. Huckabay opined that plaintiff's ability is "impaired," and that plaintiff is able to "stand and walk (with normal breaks) during an 8-hour day" for a maximum of "less than [two hours]." [Id.] Dr. Huckabay further indicated that plaintiff is able to sit for a maximum of "about [three hours]" during an 8-hour day with normal breaks, and that plaintiff "periodically" has to "alternate sitting, standing or walking to relieve discomfort." [Id.] Specifically, Dr. Huckabay opined that plaintiff can sit for 60 minutes and stand for 30 minutes before needing to change positions, and must "walk around" every 60 minutes for a duration of 10 minutes. [AR at 243-44.] Dr. Huckabay indicated that plaintiff "need[s] the opportunity to shift at will from sitting or standing/walking" (omitting emphasis), and that plaintiff will "sometimes need to lie down at unpredictable intervals," once per work shift. [AR at 244.] Dr. Huckabay opined that plaintiff can "occasionally" twist, stoop or bend, climb stairs, and balance, that plaintiff can "never" crouch, climb ladders, kneel, or crawl, and that plaintiff's abilities are restricted with regard to "[r]eaching (including overhead)," "[h]andling (gross manipulation)," and "[p]ushing/pulling." [Id.] Dr. Huckabay opined, with regard to plaintiff's

environmental restrictions, that plaintiff must "avoid all exposure" to extreme heat and extreme cold, "[f]umes, odors, dusts, gases, poor ventilation, etc.," and "[h]azards (machinery, heights, etc.)," and that plaintiff must "avoid concentrated exposure" to humidity. [AR at 244-45.] Dr. Huckabay indicated that plaintiff also exhibits signs of "[a]sthma, learning disability (impaired reading/writing), [and] depression," and anticipated that plaintiff's "impairments or treatment would cause [plaintiff] to be absent from work" approximately "once a month." [AR at 245.] Dr. Huckabay opined that plaintiff is not "capable of performing a full-time job, that is 8 hours per day, five days per week, on a regular and continuing basis." [Id.]

In a progress note dated November 28, 2011, Dr. Huckabay diagnosed plaintiff with tobacco abuse, "[h]ealthcare maintenance," hyperlipidemia, and chronic back pain. [AR at 247.] In the "Assessment/Plan" portion of the progress note, Dr. Huckabay noted, among other things, that plaintiff's chronic back pain was "stable," and that plaintiff was "doing well on gabapentin." [AR at 248.]

In his decision, the ALJ assigned "no weight" to the opinion of plaintiff's treating physician, Dr. Huckabay, and did not indicate what weight he assigned to the opinion of examining physician Dr. Hoang.[4] [AR at 18.] In rejecting Dr. Huckabay's opinion, the ALJ gave the following reasons: "[N]one of [plaintiff]'s orthopedic injuries was considered sufficiently severe to warrant an MRI. [Plaintiff's] treatment consisted only of pain medications. There are no clinical examinations showing limited range of motion or pain on palpation. Also, there is no evidence of radiating pain or deficits in muscle strength, sensation or reflexes." [Id.]

Under the circumstances, none of the reasons provided by the ALJ for giving "no weight" to Dr. Huckabay's opinion is legally sufficient and/or supported by substantial evidence. [AR at 18.] As an initial matter, even assuming the opinions of the examining physician constituted "substantial evidence," the Social Security regulations still require deference to the treating

---

[4] The ALJ appears to accept Dr. Hoang's opinion with regard to plaintiff's "gait and posture," relying on Dr. Hoang's observation of plaintiff's "normal" gait and posture as a "reasonable" basis for his conclusion that plaintiff's "pain is not as severe or as limiting as she alleged." [AR at 18.]

9

physician's opinions. See 20 C.F.R. § 404.1527; Social Security Ruling ("SSR") 96-2p,[5] 1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."); Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007) ("Even if [the examining physician's] opinion were 'substantial evidence,' § 404.1527 still requires deference to the treating physicians' opinions."). Under 20 C.F.R. §§ 404.1527 and 416.927, the Commissioner looks at the following factors in determining the weight it will give the treating physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination[]" by the treating physician; and (2) the "[n]ature and extent of the treating relationship[]" between the patient and the treating physician. Id. at §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii). "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(3)-(6)) (brackets in original).

Under the factors set forth in §§ 404.1527 and 416.927, it is clear that Dr. Huckabay's opinion should have been afforded greater weight than the opinions of the non-treating physicians. In particular, Dr. Huckabay's treating relationship provides a "unique perspective" on plaintiff's condition. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn, 495 F.3d at 633. The record reflects that Dr. Huckabay regularly treated plaintiff over the course of at least several months,

---

[5] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

apparently beginning with an examination on June 9, 2011, through at least November 28, 2011, and her treatment records cover that entire period.[6] [See generally AR at 247-78.]

The "[s]upportability" of plaintiff's treating physician's opinion adds further weight. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Viewed in its entirety, the record provides ample support for Dr. Huckabay's opinion. For example, Dr. Huckabay's treatment notes consistently document plaintiff's diagnoses of chronic back pain and/or shoulder pain. [See, e.g., AR at 270-72 (progress note dated June 9, 2011, diagnosing plaintiff with chronic back pain and indicating that she "[m]ay need referral to pain [management] clinic"), 262 (progress note dated August 11, 2011, repeating diagnosis of chronic back pain), 256-58 (progress note dated October 11, 2011, repeating diagnosis of chronic back pain and refilling plaintiff's pain medication), 253-54 (progress note dated October 17, 2011, diagnosing plaintiff with "[s]houlder pain, left," and indicating that plaintiff would "continue pain medication"), 250 (progress note dated October 26, 2011, diagnosing plaintiff with chronic left shoulder pain, chronic back pain, and bilateral knee pain), 247 (progress note dated November 28, 2011, repeating plaintiff's diagnosis of chronic back pain).]

In addition, the "consistency" of plaintiff's treating physician's opinion adds further weight. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Dr. Huckabay's opinion is "consistent 'with the record as a whole.'" See Orn, 495 F.3d at 634 (quoting 20 C.F.R. § 404.1527(c)(4)). Plaintiff's medical records repeatedly document conditions consistent with Dr. Huckabay's opinion. [See, e.g., Los Coyotes Imaging Center Medical Group examination reports ("X-ray reports"), dated October 27, 2011, including: AR at 279 (of bilateral knees, noting "[m]ild-to-moderate arthritic changes noted at medial and lateral compartments of both knees. Mild arthritic changes at the patellofemoral joints bilaterally."), 280 (of plaintiff's cervical spine, noting "[d]egenerative disc disease at C5-6"), 281 (of plaintiff's thoracolumbar spine, noting "[d]egenerative changes at multiple levels"), 282 (of plaintiff's left shoulder, noting "[m]ild degenerative disease in the acromioclavicular joint"), 283 (of plaintiff's thoracolumbar spine, noting "[d]egenerative changes

---

[6] At her hearing, plaintiff indicated that she had been treating with Dr. Huckabay for "about a year." [AR at 36.]

1  at multiple levels"), 284 (of plaintiff's left shoulder, noting "[m]ild degenerative disease
2  acromioclavicular joint"), 285 (of plaintiff's cervical spine, noting "[d]egenerative disc disease at
3  C5-6"), 286 (of plaintiff's bilateral knees, noting "[a]rthritic changes at the patellofemoral joints,
4  medial and lateral compartments of both knees"); see also AR at 300 (Rio Hondo Mental Health
5  "Initial Medication Support Service" form, dated August 3, 2011, including an assessment of "back
6  [and] neck injury").]

7  Moreover, the ALJ failed to provide specific and legitimate reasons for rejecting Dr.
8  Huckabay's opinion. First, the ALJ's statement that Dr. Huckabay's "extreme limitations are not
9  credible" is too broad and vague to achieve the level of specificity required under the law. [AR at
10  18]; Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer
11  his conclusions. He must set forth his own interpretations and explain why they, rather than the
12  doctors', are correct.").

13  Second, the ALJ's decision contains several findings or assertions that misstate the record.
14  See Reddick, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully
15  accounting for the context of materials or all parts of the testimony and reports. His paraphrasing
16  of record material is not entirely accurate regarding the content or tone of the record."); Gallant
17  v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the
18  [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a
19  conclusion first, and then attempt to justify it by ignoring competent evidence in the record that
20  suggests an opposite result.") (internal citation omitted). Initially, with regard to the ALJ's assertion
21  that "none of [plaintiff]'s orthopedic injuries was considered sufficiently severe to warrant an MRI,"
22  the record nevertheless contains evidence that plaintiff's condition was serious enough to warrant
23  multiple X-rays. [See generally AR at 279-86.] Indeed, those X-rays generally revealed
24  degenerative changes that support Dr. Huckabay's diagnoses of chronic back and shoulder pain.
25  [See, e.g., AR at 280 (x-ray of plaintiff's cervical spine, with findings including a "narrowing of the
26  C5-6 disc space with adjacent osteophytes consistent with degenerative disease"), 281 (x-ray of
27  plaintiff's thoracolumbar spine, with findings including "[d]egenerative osteophytes identified" at
28  "multiple levels").] Moreover, the ALJ provides no explanation as to why, under the circumstances,

an MRI would be superior to an x-ray, or the only way to diagnose plaintiff's condition(s). [See generally AR at 14-21.]

The ALJ further found that "[t]here are no clinical examinations showing limited range of motion or pain on palpation," and that "there is no evidence of radiating pain or deficits in muscle strength, sensation or reflexes." [AR at 18.] The ALJ appears to have selectively relied on only those portions of the record that support his desired outcome. See Reddick, 157 F.3d at 722-23; Gallant, 753 F.2d at 1456. For example, Dr. Huckabay's treatment note dated June 9, 2011, indicates plaintiff's "[g]enerally tender cervical and upper back," and noted "[l]imited [range of motion] cervical neck." [AR at 272.] In treatment notes on October 17, 2011, Dr. Huckabay reported that plaintiff's left shoulder was "very tender with deep palpation over post aspect," and further indicated "a slight indentation just below humeral head compared to [right shoulder]." [AR at 254.]

Third, the ALJ also disregarded Dr. Huckabay's opinion based on the finding that plaintiff's treatment "consisted only of pain medications." [AR at 18.] To the extent the ALJ found that pain medication *alone* is an indication of the lack of severity of plaintiff's impairment, the ALJ improperly substituted his own medical opinion for that of plaintiff's treating physician. [AR at 18]; see Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); Day v.Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ erred by relying upon "his own exploration and assessment" of plaintiff's medical condition rather than medical evidence in the record); Miller v. Astrue, 695 F.Supp.2d 1042, 1048 (C.D. Cal. 2010) ("the ALJ acted as his own medical expert, substituting his opinion for [the treating doctor]'s professional interpretation of the clinical testing, which is improper") (citation omitted); Banks v. Barnhart, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.") (internal quotation marks, alterations and citations omitted). Moreover, this reason misstates the record, as the ALJ noted that plaintiff was "prescribed medications *and referred to physical*

13

*therapy*." [AR at 17-18 (emphasis added)]; see Reddick, 157 F.3d at 722-23; Gallant, 753 F.2d at 1456.

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Huckabay's opinion. As a result, the ALJ's opinion is not supported by substantial evidence and remand is warranted.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

Here, there are outstanding issues that must be resolved before a final determination can be made. However, in an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, remand is warranted for the ALJ to properly evaluate Dr. Huckabay's opinion. Specifically, the ALJ is instructed on remand to reevaluate Dr. Huckabay's opinion in light of the record as a whole, as supplemented according to the Court's instructions herein.

Second, the ALJ at step three shall reconsider plaintiff's complete medical history, including records of plaintiff's prior 2003 SSI application and award, which the ALJ acknowledged but did not obtain or consider as part of the record of the instant claim. [AR at 16]; see 20 C.F.R. § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical

14

history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary").[7]

Next, with respect to plaintiff's contention that the ALJ "committed reversible error by not finding plaintiff met or equaled a listing level impairment," plaintiff asserts that she meets Listing 12.05C, which is a mental impairment causing "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [prior to age 22]." 20 C.F.R. Part 404, Subpt. P, app. 1 § 12.05; [JS at 3-4, 7-8.] While it does not appear that plaintiff has met her burden of proving that her mental impairment meets or equals a Listing,[8] see Tackett, 180 F.3d at 1099, this issue can be further explored on remand. In this regard, an examination of the record in plaintiff's prior SSI application and award may shed light on plaintiff's condition with regard to the onset date of the impairment and any "work-related limitation of function" or other elements of the relevant Listing. See 20 C.F.R. Part 404, Subpt. P, app. 1 § 12.05.

Finally, if necessary, the ALJ shall reassess plaintiff's credibility and RFC and determine, at step five, with the assistance of a VE, whether plaintiff is capable of performing other work existing in significant numbers in the national economy.[9]

---

[7] Although the ALJ did not consider the fact of the prior award in his decision, he nevertheless cited plaintiff's "history of working as a retail cashier in 1995 through 1997," which apparently was not a bar to an award of benefits in the prior case. [AR at 16, 19.] The ALJ appears to rely on this evidence of prior work with regard to his assessment of whether plaintiff "meets or medically equals the severity of one of the listed impairments," as well as in his credibility finding. [AR at 16-19.] Accordingly, the Court finds that "there is a reason to believe that development of an earlier period is necessary." See 20 C.F.R. § 416.912(d).

[8] An individual meets Listing 12.05C by showing a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part P, App. 1 § 12.05C. While plaintiff points to evidence of a verbal IQ score of 70 and a working memory score of 69 [AR at 230], which the ALJ found "might meet the Listing" [AR at 19], the remaining prongs must be established as well.

[9] As the ALJ's reevaluation of Dr. Huckabay's opinion may have an impact on the ALJ's credibility determination, the Court will not herein reach plaintiff's second contention regarding that issue. [See JS at 2, 8-11, 15-16.] In light of the Court's Order and instruction regarding the development of the record by including the prior SSI application and award, it is also unnecessary to reach plaintiff's fourth contention. [See JS at 2, 20-22.] Plaintiff, however, shall not be precluded from
(continued...)

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 17, 2014

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[9](...continued)
raising these issues, or any other issue, on remand.